1

2 **Law Offices of**
**BRYANT C. MacDONALD**

3 300 E. State Street
Suite 450

4 Redlands, CA  92373
Telephone: (909) 793-7995

5 Fax: (909) 335-1970
State Bar Number: 106722

6

7 Attorney for Debtors,
DANNY QUIRINO DIAZONI and

8 ELLEN SOFIA DIAZONI

9

10

11 **UNITED STATES BANKRUPTCY COURT**

12 **CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE**

13 In re:                                    )   **CHAPTER 13**
                                            )
14                                          )
                                            )   Case No. 6:09-bk-32605-PC
15                                          )
                                            )
16 DANNY QUIRINO DIAZONI and               )   NOTICE OF MOTION AND MOTION TO
   ELLEN SOFIA DIAZONI                     )   DECLARE DEBT TO SECOND TRUST
17                                          )   DEED HOLDER SELECT PORTFOLIO
                                            )   SERVICING, INC. UNSECURED AND
18              Debtors.                    )   AVOID LIEN; DECLARATION OF DANNY
                                            )   QUIRINO DIAZONI; DECLARATION OF
19                                          )   DANIEL WILLIAMS; POINTS AND
                                            )   AUTHORITIES
20                                          )
                                            )
21                                          )
                                            )   Date:  02/17/10
22                                          )   Time:  1:30 p.m.
                                            )   Place: Courtroom 304
23                                          )        3420 Twelfth Street
24 _____             )        Riverside, CA 92501

25

26 TO:  ALL INTERESTED PARTIES AND THEIR ATTORNEYS:

27 PLEASE TAKE NOTICE that debtors DANNY QUIRINO DIAZONI and

28                                    1

1

2    ELLEN SOFIA DIAZONI, on the above date and time, will move this court for an Order to

3    declare debt to second trust deed holder unsecured under In re Lam, 211 B.R.35.

4    Dated:  January 26 , 2010

5

6
                                                    Respectfully submitted,
7
                                                    LAW OFFICES OF
8                                                   BRYANT C. MacDONALD

9
                                                    By
10
                                                       BRYANT C. MacDONALD
11                                                     Attorney for Debtors.
                                                       DANNY QUIRINO DIAZONI and
12                                                     SOFIA DIAZONI

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              2

## _MOTION TO DECLARE DEBT TO SECOND TRUST DEED HOLDER_

## _SELECT PORTFOLIO SERVICING, INC. UNSECURED_

## _AND TO AVOID LIEN_

Debtors, DANNY QUIRINO DIAZONI and ELLEN SOFIA DIAZONI hereby move

that the lien of SELECT PORTFOLIO SERVICING, INC. on debtors' real property be avoided

and the debt on the second trust deed, Exhibit "A", be treated as unsecured.

This motion is based on the attached Declaration of DANNY QUIRINO DIAZONI, the

attached Points and Authorities, and the attached appraisal, Exhibit "C".

Dated:  January _26_ , 2010.

Respectfully submitted,

LAW OFFICES OF
BRYANT C. MacDONALD

By _____
    BRYANT C. MacDONALD
    Attorney for Debtors,
    DANNY QUIRINO DIAZONI and
    ELLEN SOFIA DIAZONI

3

## DECLARATION OF DANNY QUIRINO DIAZONI IN SUPPORT

## OF MOTION TO HAVE 2ND TRUST DEED HOLDER

## DECLARED UNSECURED "(ie LIEN STRIPPING)

STATE OF CALIFORNIA          )
                                             )ss
COUNTY OF SAN BERNARDINO )

    I, DANNY QUIRINO DIAZONI, hereby declare the following to be true and correct under penalty of perjury:

    1. I am the debtor in the above Chapter 13 converted on January 5, 2010, Case No. 6:09-bk-32605-PC.

    2. I am the owner of the real property at 1223 William McGrath Street, Colton, CA 92324.

    3. When I filed my bankruptcy, I believed my house was worth not more than $200,000.   A recent appraisal disclosed its actual value as $215,000 and I believe this is correct.  There are two (2) liens against the house:

    (1) The amount owed on the First Mortgage to HSBC MORTGAGE SERVICES was $301,621.00.  (See Exhibit "A", most recent statement at time of filing.)

    (2) The amount owed on the second mortgage to SELECT PORTFOLIO SERVICING, INC. was $77,247 (Exhibit "B").

    4. I base my estimate of the value of my house on my knowledge as the owner of the sales of similar houses in the neighborhood and on the appraisal.

    5. I have attached a Declaration from my appraiser, with his appraisal.  (See Exhibit "C".)

4

1

2

3        I declare under penalty of perjury under the laws of the State of California that the

4    foregoing is true and correct, and I would and could testify competently thereto if called upon

5    to do so.

6    Executed this _01/25/10_ day of January, 2010, at Redlands, California.

7

8

9    _____
        DANNY QUIRINO DIAZONI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*EXHIBIT "A"*


Statement for

ELLEN S DIAZONI
DANNY Q DIAZONI
0011612843

| Statement Date | 04/14/09 |
|---|---|
| Payment Due | $12,726.15 |
| Payment Due Date | 05/01/09 |

To avoid late charges payment
must be received by 11/16/08

---

**Customer Care:**  1-800-333-7023    **Website:**  hsbcmortgageservices.com    **064861**    Page: 1 of 1

**Payment Detail**

**Your payment due**    05/01/09

| | |
|---|---|
| Principal & Interest | $1,748.27 |
| Escrow/Advances | $0.00 |
| Total Optional Insurance | $0.00 |
| **Standard Payment** | **$1,748.27** |
| Past Due Amount | $10,489.62 |
| Unpaid Late Charges | $363.26 |
| Other Fees | 125.00 |
| **Payment Due** | **$12,726.15** |

**Account Summary**

**Summary as of 04/14/09**

Balances

| | |
|---|---|
| Principal Balances | $301,621.59 |
| Unpaid/Deferred Interest | $2,410.78 |
| Escrow | $0.00 |
| Advance | $0.00 |
| Unapplied Funds | $1,000.00 |

Get the answers you need through our automated phone system available 24/7. Just touch a button and get the answers to many of your questions immediately

1  To repeat your payment information

2  To make a payment by phone or to obtain other payment option

3  If you will be mailing a payment, or sending a payment through Western Union within the next few days

4  For 1098 reporting information or to obtain a copy of your year end statement

5  If you are calling for payoff information

6  To obtain detailed information about your loan, such as homeowners insurance, payoff information, current escrow info, set up escrow, or current Year to Date interest information

7  If you are calling for our payment or correspondence address

8  Speak to a Customer Care Specialist

---

**Transaction Details**

| Tran Date | Effective Date | Description | Total | Principal | Interest | Escrow | Insurance | Late Charges/ Other Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|
| 03/31/09 | 03/31/09 | PAYMENT | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,000.00 |
| 03/31/09 | 03/31/09 | PAYMENT | $1,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Important Messages**

STM7306M (02/07)

---

Please Use Blue or Black Ink

| | |
|---|---|
| Payment Due Date | 05/01/09 |
| Current Payment | $1,748.27 |
| Total Amount Due | $12,726.15 |
| If Received After: | 11/16/08 |
| Total Amount Plus Late Charge | $12,726.15 |

04/23/09

**HSBC**

Loan Number  0011612843

Additional Principal  $

Additional Escrow  $

**Total Check Amount Enclosed $**

7822 1 AT 0.346   **AUTO**SCH 3-DIGIT 923
ELLEN S DIAZONI
DANNY Q DIAZONI
PO BOX 151
COLTON, CA 92324

HSBC Mortgage Services
P.O. Box 60139
City of Industry, CA 91716-0139

*EXHIBIT "B"*



April 06, 2009

Ellen S Diazoni
Danny Q Diazoni
1223 William Mcgrath St
Colton, CA  92324

RE: Loan Number 0012004271

VALIDATION OF DEBT NOTICE

Dear Customer:

We recently sent you a letter advising you that the servicing of your
mortgage loan was transferred to Select Portfolio Servicing, Inc. ("SPS")
effective April 01, 2009.  As the servicer for your mortgage loan,
SPS is collecting the debt on behalf of Csfb Hemt 2006-2,
the investor who currently owns your mortgage loan.  SPS is responsible
for sending your monthly mortgage statements, accepting your monthly
mortgage payments, collecting any amount due caused by your default under
the terms of your Note and Mortgage and generally administering the terms
of your mortgage loan.
As of April 06, 2009, our records show that you owe $ 77,515.06
on your mortgage which includes:

| | | |
|---|---|---|
| Unpaid Principal Balance: | $ | 77,247.95 |
| Corporate Advances: | $ | 152.00 |
| Late Charges: | $ | 115.11 |

The amount shown does not include interest.  Because of interest, late
charges, and other charges this amount may vary from day to day and the
amount due on the day you pay may be greater.

Federal law gives you thirty days after you receive this letter, to
dispute the validity of the debt, or any part of it.  If you don't
dispute it within that period, we will assume that it is valid.  If you
do dispute it, by notifying us in writing to that effect, we will, as
required by law, obtain and mail to you, proof of the debt.  And if,
within the same period, you request in writing, the name and address of
your original creditor, if the original creditor is different from the
current investor, we will furnish that information too.

Page 1 of 2190



We are required under state law to notify consumers of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 am or after 9 pm. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

If you have any questions regarding your mortgage loan, please contact us at (800) 258-8602 Monday through Friday between the hours of 7 a.m. and 9 p.m., Eastern Time. You may also write to us at the following address (please note that this is different from the address to which you should send your monthly payments):

> Select Portfolio Servicing
> Customer Service Department
> 10401 Deerwood Park Blvd.
> Jacksonville, FL 32256

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene informaci n importante concerniente a sus derechos. Por favor, h gala traducir. Nuestros representantes bilingues est n a su disposici n para contestar cualquier pregunta llamando al tel fono 1-800-831-0118 y marque la opci n 2.

THIS COMMUNICATION FROM A DEBT COLLECTOR IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

> Minnesota - This collection agency is licensed by the
> Minnesota Department of Commerce

New York City - Collection Agency License No. 0987252

Page 2 of 2

~AQ004 005/CPIₛₑₒ



*EXHIBIT "C"*

**Appraisal Institute®**
*Professionals Providing Real Estate Solutions*

# Summary Appraisal Report · Residential

**of**

Diazoni

1223 William Mcgrath Street
Colton, CA 92324

**As Of:**

January 19, 2010

**Prepared For:**

Law Offices of Bryant MacDonald
300 E. State Street
Redlands, CA 92373

**Prepared By:**

Daniel J. Williams
Realty Valuation Associates
11866 Avenel Lane
Yucaipa, CA 92399

Realty Valuation Associates

| Client: | Law Offices of Bryant MacDonald | Client File #: | S606B4WI |
|---------|--------------------------------|----------------|----------|
| Subject Property: | 1223 William Mcgrath Street | Appraisal File #: | |

# Table of Contents

| Page Title | Page # |
|------------|--------|
| Residential Summary App. Pg. 1 | 1 |
| Residential Summary App. Pg. 2 | 2 |
| Sales Comparison Approach | 3 |
| Extra Comps 4-5-6 | 4 |
| Assumptions/Limiting Conditions | 5 |
| Appraiser's Certification | 6 |
| Sketch | 7 |
| Comments | 8 |
| Plat Map | 9 |
| Location Map | 10 |
| PROPERTY PROFILE | 11 |
| Photo Subject | 12 |
| Photo Subject Extra | 13 |
| Photos | 14 |
| Photo Comparables 1-2-3 | 15 |
| Photo Comparables 4-5-6 | 16 |

| Client File #: S606B4WI | | Appraisal File #: |

# Summary Appraisal Report · Residential

**Appraisal Institute®**

AI Reports ™   **Form AI-100.02***

| Appraisal Company: | Realty Valuation Associates |
|---|---|
| Address: 11866 Avenel Lane, Yucaipa, CA 92399 | |
| Phone:   909-570-9788   Fax:   501-642-1581   Web: Appraisals4InlandEmpire.com | |

| Appraiser: Daniel J. Williams | | | | | | Co-Appraiser: | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AI Membership: | SRA | MAI | SRPA | Associate Member | X | None | AI Membership: | SRA | MAI | SRPA | Associate Member | None |

Other Professional Affiliation: Certified Residential Appraiser AR005903 Other Professional Affiliation:

E-mail: dwill909@aol.com   E-mail:

| Client:  Law Offices of Bryant MacDonald | Contact: |
|---|---|
| Address:  300 E. State Street, Redlands, CA 92373 | |
| Phone:  909-793-7995   Fax: | E-mail: Maclaw51@verizon.net |

## REAL ESTATE IDENTIFICATION

Address:  1223 William Mcgrath Street

| City:  Colton | County:  San Bernardino | State:   CA   Zip:   92324 |
|---|---|---|

Legal Description:   Tract 14391-2 lot 101

| Tax Parcel #: 0160-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 | RE Taxes:   3,310 | Tax Year:   2009 |
|---|---|---|

## SUBJECT PROPERTY HISTORY

Owner of Record: Diazoni, Danny & Ellen

Description and analysis of sales within 3 years (minimum) prior to effective date of value: The subject has not sold nor has it been listed for sale within the past three years.  Data sources include MLS and FARES public records.

Description and analysis of agreements of sale (contracts), listings, and options: N/A

## RECONCILIATIONS AND CONCLUSIONS

Indication of Value by Sales Comparison Approach   $   215,000

Indication  of Value by Cost Approach   $   N/A

Indication  of Value by Income Approach   $   N/A

Final Reconciliation of the Methods and Approaches to Value:  The sales comparison approach to value is given primary weight in determining the subject's value, as it is deemed most reliable.  The cost approach was not considered due to uncertainty associated with site value, construction costs, functional obsolescence and accrued depreciation, and because cost does not indicate market value.  The income approach was not considered due to the lack of data for determining a GRM.

**Opinion of Value as of:** January 19, 2010   $   215,000

*Subject to any hypothetical conditions or extraordinary assumptions stated in the Assignment Parameters section.*

* NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute plays no role in completing the form and disclaims any responsibility for the data analysis or any other work product provided by the individual appraiser(s)

Realty Valuation Associates

| Client: | Law Offices of Bryant MacDonald | Client File #: | S606B4WI |
|---|---|---|---|
| Subject Property: | 1223 William Mcgrath Street | Appraisal File #: | |

## ASSIGNMENT PARAMETERS

Intended User(s): Law offices of Bryant MacDonald

Intended Use: To assist the above-named client by providing a market value estimate of the subject property for use in a bankruptcy case. *This report is not intended by the appraiser for any other use or by any other user.*

Type of Value: Market    Effective Date of Value: 1-19-2010

Interest Appraised: [X] Fee Simple   [ ] Leasehold   [ ] Other:

Hypothetical Conditions: (A hypothetical condition is that which is contrary to what exists, but is asserted by the appraiser for the purpose of analysis. Any hypothetical condition may affect the assignment results.)  None.

Extraordinary Assumptions: (An extraordinary assumption is directly related to a specific assignment and presumes uncertain information to be factual. If found to be false this assumption could alter the appraiser's opinions or conclusions. Any extraordinary assumption may affect the assignment results.)  None.

In accordance with Standard Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP), this is a summary appraisal report.

## SCOPE OF WORK

Definition: The scope of work is the type and extent of research and analysis in an assignment. Scope of work includes: the extent to which the property is identified; the extent to which tangible property is inspected; the type and extent of data researched; and the type and extent of analysis applied to arrive at opinions or conclusions. The specific scope of work for this assignment is identified below and throughout this report.

**Inspection of Subject:**

Appraiser:
[ ] None  [X] Interior [X] Exterior
[X] Date of Inspection 1-19-2010

Co-Appraiser:
[ ] None  [ ] Interior [ ] Exterior
[ ] Date of Inspection

Living Area Measured:
[X] Yes  [ ] No
[ ] Other: _____

**Data Sources Used:**

[X] MLS
[X] Public Records
[ ] Office Files
[X] Owner
[ ] Plans & Specifications
[ ] Purchase Agreement
[ ] Other: _____

_____
_____
_____
_____
_____
_____

**Approaches to Value Developed:**

Cost Approach:
[ ] Is necessary and developed in this analysis
[X] Is applicable but not necessary and omitted in this analysis
[ ] Is not applicable or necessary and omitted in this analysis

Sales Comparison Approach:
[X] Is necessary and developed in this analysis
[ ] Is applicable but not necessary and omitted in this analysis
[ ] Is not applicable or necessary and omitted in this analysis

Income Approach:
[ ] Is necessary and developed in this analysis
[ ] Is applicable but not necessary and omitted in this analysis
[X] Is not applicable or necessary and omitted in this analysis

Additional Scope of Work Comments: The SCOPE OF THE WORK includes consideration of all three approaches to value. As a non-income producing single family residence, the income approach not deemed relevant for this assignment, thus was not included in this report. The cost approach is not reliable, thus was not included. The inspection consisted of an interior and exterior inspection and measurement of the subject, and an exterior inspection from the street of all comparables. Information about the subject and comparable sales was obtained from inspection of all properties included in the report, public records sources, the local Multiple Listing Service, and local brokers and other principals when available.

Significant Real Property Appraisal Assistance: [X] None   [ ] Disclose Name(s) and contribution:

Realty Valuation Associates

| | | |
|---|---|---|
| **Client:** | Law Offices of Bryant MacDonald | **Client File #:** S606B4WI |
| **Subject Property:** | 1223 William Mcgrath Street | **Appraisal File #:** |

## SALES COMPARISON APPROACH

| ITEM | SUBJECT | COMPARISON NO. 1 | | COMPARISON NO. 2 | | COMPARISON NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1223 William Mcgrath Street Colton, CA 92324 | 1283 William Mcgrath Street 160-401-42 | | 1325 Porfirio Elias Way 160-401-0B | | 1216 Del Giorgio Drive 160-421-54 | |
| Proximity to Subject | | 0.05 miles W | | 0.11 miles NW | | 0.19 miles S | |
| Final List Price | N/A | $ 215,900 | | $ 190,000 | | $ 214,000 | |
| Sale Price | N/A | $ 215,000 | | $ 196,000 | | $ 212,727 | |
| Sale-To-List Price Ratio | N/A | 99.58 % | | 103.16 % | | 99.41 % | |
| Closing Date | N/A | 11-23-09 | | 12-22-09 | | 12-14-09 | |
| Days On Market | N/A | 11 | | 23 | | 181 | |
| Price/Gross Living Area | $ 0.00 | $ 113.34 | | $ 103.32 | | $ 97.09 | |
| Data Source/ Verification | | MLS#H09099545 FARES public records | | MLS#E09096353 FARES public records | | MLS#I09004182 FARES public records | |
| | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Financing Type | N/A | $219,622 V.A. | | Cash | | $210,123 FHA | |
| Concessions | N/A | None | | None | | None | |
| Contract Date | N/A | 10-8-09 | | 10-6-09 | | 11-9-09 | |
| Location | Average | Similar | | Similar | | Similar | |
| Site Size | 7,326 sqft. | 7,200 sqft. | 0 | 7,130 sqft. | 0 | 6,882 sqft. | 0 |
| Site Views/Appeal | None | None | | None | | None | |
| Design and Appeal | Average | Similar | | Similar | | Similar | |
| Quality of Construction | Average | Similar | | Similar | | Similar | |
| Age | 1996 | 1996 | | 1996 | | 1998 | |
| Condition | Good | Similar | | Similar | | Inferior | +5,000 |
| Above Grade Bedrooms | Bedrooms 4 | Bedrooms 4 | | Bedrooms 4 | | Bedrooms 5 | |
| Above Grade Baths | Baths 3.00 | Baths 3.00 | | Baths 3.00 | | Baths 3.00 | |
| Gross Living Area | 1,897 Sq. Ft. | 1,897 Sq. Ft. | 0 | 1,897 Sq. Ft. | 0 | 2,191 Sq. Ft. | -8,800 |
| Below Grade Area | None | None | | None | | None | |
| Below Grade Finish | | | | | | | |
| Other Living Area | None Encl patio | None Lattice patio | +5,000 | None Lattice patio | +5,000 | None Covered patio | +5,000 |
| Functional Utility | Average | Similar | | Similar | | Similar | |
| Heating/Cooling | Fau/cac | Fau/cac | | Fau/cac | | Fau/cac | |
| Car Storage | Attached-2 | Attached-2 | | Attached-2 | | Attached-2 | |
| Site improvements | Good | Inferior | +3,000 | Similar | | Similar | |
| Fireplace: | 1 fireplace | 1 fireplace | | 1 fireplace | | 1 fireplace | |
| Net Adj. (total) | | X + ☐ - $ 8,000 | | X + ☐ - $ 5,000 | | X + ☐ - $ 1,200 | |
| Adjusted Sale Price | | Net=4% Gross=4% $ 223,000 | | Net=3% Gross=3% $ 201,000 | | Net=1% Gross=9% $ 213,927 | |

Comments and reconciliation of the sales comparison approach: Comps 1-3 are the most similar and recent closed sales in the neighborhood. Comps 4 and 5 are pending sales, comp 6 is an active listing. Comps 1 and 3 sold with gov't backed financing, but no concessions were documented. All comps except #3 are model matches in the subject's tract; public records for comps shows 1,854 square feet, which is the same for the subject. The measured figure of 1,897 is used for the subject and all of the model matches. Public records incorrectly shows 2,192 square feet for the subject; this figure includes 338 square feet of enclosed patio, which should not be included in the living area. The enclosed patio has value, which is shown in the patio adjustments, not in the living area. No comps were found with similar enclosed patios, thus all comps are adjusted upward for inferior covered patios or open slabs. Adjustment is based on historical paired sales analysis of similar homes which sold with enclosed patios and without them. Comps 1, and 4-6 are adjusted for slightly inferior site improvements due to the subject's concrete areas and retaining walls. Comps 2 and 5 are adjusted for slightly inferior condition, based on MLS descriptions, in need of minor cosmetic repairs. Comps 1 and 2 are the most similar closed sales, requiring least adjustment, thus are given equal primary weight in estimating the subject's value. Comp 3 is supportive. Comps 4-6 are given less weight, as their eventual sales prices are yet unknown, but are generally supportive of the value indicated.

| Indication of Value by Sales Comparison Approach | | $ 215,000 |
|---|---|---|

| Client: | Law Offices of Bryant MacDonald | Client File #: | |
| Subject Property: | 1223 William Mcgrath Street | Appraisal File #: | |

## SALES COMPARISON APPROACH

| ITEM | SUBJECT | COMPARISON 4 | | COMPARISON 5 | | COMPARISON 6 | |
|---|---|---|---|---|---|---|---|
| Address | 1223 William Mcgrath Street Colton, CA 92324 | 1336 Porfirio Elias Way 160-401-25 | | 1268 Porfirio Elias Way 160-401-20 | | 1398 William Mcgrath Street 160-401-57 | |
| Proximity to Subject | | 0.12 miles NW | | 0.08 miles NW | | 0.14 miles W | |
| Final List Price | N/A | $ 215,000 | | $ 194,900 | | $ 200,000 | |
| Sale Price | N/A | $ 215,000 | | $ 194,900 | | $ 200,000 | |
| Sale-To-List Price Ratio | | 100.00 % | | 100.00 % | | 100.00 % | |
| Closing Date | | Pending sale | | Pending sale | | Active listing; in foreclosure | |
| Days On Market | N/A | 481 | | 64 | | 72 | |
| Price/Gross Living Area | $ 0.00 | $ 113.34 | | $ 102.74 | | $ 105.43 | |
| Data Source/ Verification | | MLS#C08122118 FARES public records | | MLS#I09121727 FARES public records | | MLS#K09120517 FARES public records | |
| | DESCRIPTION | DESCRIPTION | Adjustment | DESCRIPTION | Adjustment | DESCRIPTION | Adjustment |
| Financing Type | N/A | N/A | | N/A | | N/A | |
| Concessions | N/A | N/A | | N/A | | N/A | |
| Contract Date | N/A | 9-11-09 | | 12-2-09 | | N/A | |
| Location | Average | Similar | | Similar | | Similar | |
| Site Size | 7,326 sqft. | 7,200 sqft. | 0 | 7,200 sqft. | 0 | 7,245 sqft. | 0 |
| Site Views/Appeal | None | None | | None | | None | |
| Design and Appeal | Average | Similar | | Similar | | Similar | |
| Quality of Construction | Average | Similar | | Similar | | Similar | |
| Age | 1996 | 1996 | | 1996 | | 1996 | |
| Condition | Good | Similar | | Inferior | +5,000 | Similar | |
| Above Grade Bedrooms | Bedrooms 4 | Bedrooms 4 | | Bedrooms 4 | | Bedrooms 4 | |
| Above Grade Baths | Baths 3.00 | Baths 3.00 | | Baths 3.00 | | Baths 3.00 | |
| Gross Living Area | 1,897 Sq. Ft. | 1,897 Sq. Ft. | 0 | 1,897 Sq. Ft. | 0 | 1,897 Sq. Ft. | 0 |
| Below Grade Area Below Grade Finish | None | None | | None | | None | |
| Other Living Area | None Encl patio | None Patio slab | +7,500 | None Patio slab | +7,500 | None Cov'd patio | +5,000 |
| Functional Utility | Average | Similar | | Similar | | Similar | |
| Heating/Cooling | Fau/cac | Fau/cac | | Fau/cac | | Fau/cac | |
| Car Storage | Attached-2 | Attached-2 | | Attached-2 | | Attached-2 | |
| Site improvements | Good | Inferior | +3,000 | Inferior | +3,000 | Inferior | +3,000 |
| Fireplace: | 1 fireplace | 1 fireplace | | 1 fireplace | | 1 fireplace | |
| Net Adj. (total) | | X + - $ 10,500 | | X + - $ 15,500 | | X + - $ 8,000 | |
| Adjusted Sale Price | | Net=5% Gross=5% $ 225,500 | | Net=8% Gross=8% $ 210,400 | | Net=4% Gross=4% $ 208,000 | |

Comments and reconciliation of the sales comparison approach:

| Client: | Law Offices of Bryant MacDonald | Client File #: | S606B4WI |
|---|---|---|---|
| Subject Property: | 1223 William Mcgrath Street | Appraisal File #: | |

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS

This appraisal is subject to the following assumptions and limiting conditions:

- This report is prepared using forms developed and copyrighted by the Appraisal Institute. However, the content, analyses, and opinions set forth in this report are the sole product of the appraiser. The Appraisal Institute is not liable for any of the content, analyses, or opinions set forth herein.

- No responsibility is assumed for matters legal in character or nature. No opinion is rendered as to title, which is assumed to be good and the property is marketable. All existing liens, encumbrances, and assessments have been disregarded, unless otherwise noted, and appraised as though free and clear, having responsible ownership and competent management.

- I have examined the property described herein exclusively for the purposes of identification and description of the real property. The objective of our data collection is to develop an opinion of the highest and best use of the subject property and make meaningful comparisons in the valuation of the property. The appraiser's observations and reporting of the subject improvements are for the appraisal process and valuation purposes only and should not be considered as a warranty of any component of the property. This appraisal assumes (unless otherwise specifically stated) that the subject is structurally sound and all components are in working condition.

- I will not be required to give testimony or appear in court because of having made an appraisal of the property in question, unless specific arrangements to do so have been made in advance, or as otherwise required by law.

- I have noted in this appraisal report any significant adverse conditions (such as needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) discovered during the data collection process in performing the appraisal. Unless otherwise stated in this appraisal report, I have no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and have assumed that there are no such conditions and make no guarantees or warranties, express or implied. I will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because I am not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable public and/or private sources that I believe to be true and correct.

- I will not disclose the contents of this appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and/or applicable federal, state or local laws.

- The Client is the party or parties who engage an appraiser (by employment or contract) in a specific assignment. A party receiving a copy of this report from the client does not, as a consequence, become a party to the appraiser-client relationship. Any person who receives a copy of this appraisal report as a consequence of disclosure requirements that apply to an appraiser's client, does not become an intended user of this report unless the client specifically identified them at the time of the assignment. The appraisers written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

- A true and complete copy of this report contains ___16___ pages including exhibits which are considered an integral part of the report. The appraisal report may not be properly understood without access to the entire report.

- If this valuation conclusion is subject to satisfactory completion, repairs, or alterations, it is assumed that the improvements will be completed competently and without significant deviation.

## VALUE DEFINITION

| [X] Market Value Definition (below) | Alternate Value Definition (attached) |
|---|---|

MARKET VALUE is defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. buyer and seller are typically motivated;
2. both parties are well informed or well advised and acting in what they consider their own best interests;
3. a reasonable time is allowed for exposure in the open market;
4. payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Source: Appraisal Institute Dictionary of Real Estate Appraisal

| Client: | Law Offices of Bryant MacDonald | Client File #: | S606B4WI |
|---|---|---|---|
| Subject Property: | 1223 William Mcgrath Street | Appraisal File #: | |

## APPRAISER CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The reported analysis, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analysis, opinions, and conclusions.

- I have no present (unless specified below) or prospective interest in the property that is the subject of this report, and I have no (unless specified below) personal interest with respect to the parties involved.

- I have no bias with respect to any property that is the subject of this report or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon the developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

- Individuals who have provided significant real property appraisal assistance are named below. The specific tasks performed by those named are outlined in the Scope of Work section of this report.

[X] None    [ ] Name(s) _____

As previously identified in the scope of work section of this report, the signer(s) of this report certify to the inspection of the property that is the subject of this report as:

**Appraiser**       [ ] None   [X] Interior   [X] Exterior
**Co-Appraiser**   [ ] None   [ ] Interior   [ ] Exterior

## ADDITIONAL CERTIFICATION FOR APPRAISAL INSTITUTE MEMBERS

**Appraisal Institute Member Certifies:**

- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute, which include the Uniform Standards of Professional Appraisal Practice.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

| **Designated Appraisal Institute Member Certifies:** | **Designated Appraisal Institute Member Certifies:** |
|---|---|
| - As of the date of this report, I [X] have / [ ] have not completed the continuing education program of the Appraisal Institute. | - As of the date of this report, I [ ] have / [ ] have not completed the continuing education program of the Appraisal Institute. |

| **APPRAISER:** | **CO-APPRAISER:** | |
|---|---|---|
| Signature _Daniel J. William_ | Signature _____ | |
| Name  Daniel J. Williams          Report Date  1-19-10 | Name _____ | Report Date _____ |
| State Certification #  AR005905          ST  CA | State Certification # _____ | ST _____ |
| or License # _____          ST _____ | or License # _____ | ST _____ |
| Expiration Date  11-13-10 | Expiration Date _____ | |

AI Reports ™  Form AI-900.01 Assumptions and Limiting Conditions/Certification      © Appraisal Institute 2005      11/08/05

Realty Valuation Associates

| Client: | Law Offices of Bryant MacDonald | Client File #: | S606B4WI |
|---|---|---|---|
| Subject Property: | 1223 William Mcgrath Street | Appraisal File #: | |



Sketch by Apex Medina™

Comments.

## AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 1113.6 | 1113.6 |
| GLA2 | Second Floor | 783.4 | 783.4 |
| GAR | Garage | 489.1 | 489.1 |
| P/P | Encl patio | 338.8 | 338.8 |

## LIVING AREA BREAKDOWN

| | Breakdown | | | Subtotals |
|---|---|---|---|---|
| First Floor | | | | |
| | 18.0 | x | 5.3 | 94.5 |
| | 38.7 | x | 10.0 | 387.5 |
| | 2.3 | x | 6.3 | 14.1 |
| | 2.0 | x | 7.5 | 15.0 |
| | 1.0 | x | 20.8 | 20.8 |
| | 1.0 | x | 26.8 | 26.8 |
| | 5.5 | x | 33.5 | 184.3 |
| | 9.3 | x | 40.0 | 370.0 |
| 0.5 x | 1.3 | x | 1.3 | 0.8 |
| Second Floor | | | | |
| | 21.5 | x | 5.3 | 112.9 |
| | 23.5 | x | 8.5 | 199.8 |
| | 3.0 | x | 19.3 | 57.8 |
| | 20.8 | x | 19.5 | 404.6 |
| | 1.3 | x | 6.8 | 8.4 |

Net LIVABLE Area    (rounded)    1897     14 Items    (rounded)    1897

Realty Valuation Associates

| Client: | Law Offices of Bryant MacDonald | Client File #: | S606B4WI |
|---|---|---|---|
| Subject Property: | 1223 William Mcgrath Street | Appraisal File #: | |

MARKET CONDITIONS:

The following market conditions data was copied from Dataquick News on 12-7-09:

| | Sales Volume | | | | Median Price | | |
|---|---|---|---|---|---|---|---|
| All homes | Oct-08 | Oct-09 | %Chng | | Oct-08 | Oct-09 | %Chng |
| Riverside | 4,619 | 4,197 | -9.10% | | $230,000 | $190,000 | -17.40% |
| San Bernardino | 2,856 | 3,176 | 11.20% | | $200,000 | $150,000 | -25.00% |

La Jolla, CA—Southern California home sales rose in October as prices showed more signs of firming. The median sale price fell by the smallest amount in two years, the result of a shrinking inventory of homes for sale and government and industry efforts to stoke demand and curtail foreclosures, a real estate information service reported.

Sales increases over the last two months can be partially attributed to the recent increase in short sales, which take longer to close escrow. The result is that some summer deals that might normally have closed earlier instead closed in September and October.

Other factors driving home sales higher of late: A rush by some to take advantage of the federal tax credit for first-time buyers, which was initially set to expire at the end of this month but was recently extended and expanded. Also, mortgage rates remain extremely attractive and, combined with home price declines, have boosted housing affordability.

Last month, foreclosure resales -- houses and condos sold in October that had been foreclosed on in the prior 12 months – made up 40.6 percent of all Southland resales. That was up insignificantly from 40.4 percent in September and down from a high of 56.7 percent in February this year.

ADDITIONAL FEATURES:

Tile flooring throughout the first floor, wood laminate flooring on the stairs and throughout the upstairs, tile kitchen countertops, fiberglass tub surrounds, central heat and air conditioning, fireplace in family room, skylight, new interior paint upstairs, security screen door, block retaining walls along west side, and 15' from north side (divides rear patio from garden area, but no access to rear area). A 338 square foot enclosed patio is attached to the rear of the house (tile floor, single wall construction, electricity, wall cooler). Public records incorrectly includes the patio as living area.

The subject is an average quality tract house in good physical condition. Functional obsolescence is noted as the market will not support the full cost of the enclosed patio.

Realty Valuation Associates

PLAT MAP

File No.
Case No.   S806B4WI

| Borrower | Diazoni | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1223 William Mcgrath Street | | | | | |
| City Colton | | County | San Bernardino | State | CA | Zip Code 92324 |
| Lender/Client | Law Offices of Bryant MacDonald | | Address | 300 E. State Street, Redlands, CA 92373 | | |



LOCATION MAP ADDENDUM

Realty Valuation Associates

| Borrower | Diazoni | | | | File No. | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1223 William Mcgrath Street | | | | Case No. | S606B4WI | |
| City Colton | | County | San Bernardino | State | CA | Zip Code | 92324 |
| Lender/Client | Law Offices of Bryant MacDonald | | Address | 300 E. State Street, Redlands, CA 92373 | | | |



### *DECLARATION OF DANIEL J. WILLIAMS*

STATE OF CALIFORNIA )
)ss
COUNTY OF SAN BERNARDINO )

I, DANIEL J. WILLIAMS, hereby declare the following to be true and correct under penalty of perjury:

1.      I am a certified residential appraiser under the laws of the State of California with the State Certification Number of AR005905. I specialize in residential appraisals and have my own business Realty Evaluations Associates located at 11866 Avenel Lane, Yucaipa, CA 92399.

2.      Attached hereto is a true and correct copy of my appraisal of the residential property with the Assessor's Parcel Number of 0160-401-67 commonly known as 1223 William McGrath Street, Colton, CA 92324.   My appraisal for said property is $215,000 as of January 19, 2010.

3. My appraisal was based on a visual inspection of the property including the interior and an examination of comparable sales.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and I would and could competently testify to the above.

Executed this 26TH day of January, 2010, at Redlands, California.

DANIEL J. WILLIAMS

6

## POINTS AND AUTHORITIES

## IN SUPPORT OF MOTION TO AVOID LIEN

### I.

### AVOIDANCE OF THE LIEN IN THIS CASE IS MANDATED BY

### THE PLAIN LANGUAGE OF THE BANKRUPTCY CODE

### AND RELEVENT PRECEDENT

**A. Under Nobleman, a mortgage can be stripped down to the value of the collateral in Chapter 13.**

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest, in the estate's interest of such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

This provision gives a debtor permission to make a particular type of modification of secured claims – that is to limit the amount of the secured claim to the value of the collateral. To the extent the collateral does not support the claim, the claimant is unsecured. See *In re Winthrop Old Farm Nurseries,* 50 F 3d 72 (1st Cir. 1995); *In re Hammond,* 27 F.3d 52, 56 (3rd Cir. 1994). Section 506(d) then allows the debtor to void the creditor's lien to the extent the claim is unsecured. Use of §506 of the Bankruptcy Code to modify secured claims has generally been called "stripdown".

*In re Lam,* 161 B.R. 271 (Bankr. W.D. Ok.1993), the Bankruptcy Appellate Panel rejected the bankruptcy court's reliance on Nobleman's focus on the rights of secured claims rather than on the value of the claim itself. In rejecting the bankruptcy court's approach as

7

applied to wholly unsecured claims, the *Lam* court stated:

The Nobleman decision prohibiting, prohibiting the removal of a partially unsecured claim is decidedly different from requiring a Chapter 13 debtor to continue to pay the mortgage contract when the mortgage lien attached to nothing and the lien ceased to be a secured claim.

*In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997)

Dated: January *26*, 2010

Respectfully submitted,

LAW OFFICES OF
BRYANT C. MacDONALD

By _____
BRYANT C. MacDONALD
Attorney for Debtors,
DANNY QUIRINO DIAZONI and
ELLEN SOFIA DIAZONI

8

*EXHIBIT "A"*

**SPS** SELECT
Portfolio
SERVICING, inc.

CI-277-4335

P.O. Box 65777
Salt Lake City, UT 84165

Date: 03/19/2009

#BWNJXZF
ELLEN S DIAZONI
DANNY Q DIAZONI
1223 WILLIAM MCGRATH ST
COLTON CA 92324-1663

Re:    SPS LOAN NO.          0012004271
       Property Located at:  1223 WILLIAM MCGRATH ST
                             COLTON, CA  92324

Dear Customer:

We are pleased to inform you that the servicing of your 2nd lien mortgage loan will be transferred from Wilshire Credit Corporation to Select Portfolio Servicing, Inc. (SPS) effective 04/01/2009.

Here are a few important points that will help you understand how this transfer may affect you:

- **Your prior servicer will stop accepting your mortgage payments after 03/31/2009.**
- **Beginning 04/01/2009, all payments must be remitted to SPS.**
- **You can expect to begin receiving monthly statements from SPS within the next few weeks.  If you do not receive a statement prior to your next due date, please include the attached temporary coupon with your payment.  Be certain to reference your new SPS loan number, as set forth above, on your check.**
- **If you have already mailed your payment to your prior servicer and it is received after 04/01/2009, it will be forwarded to SPS for processing.**
- **If your prior servicer automatically drafts your monthly payment from your bank account, that service will cease and you will have to provide SPS with a completed Authorization for Withdrawal and Direct Payment form (enclosed). The completed authorization may take up to 45 days to process.  We will notify you when the direct withdrawal will commence.  Until you receive that notice, you must remit any payments that come due.**
- **If you were provided mortgage life, disability or other types of optional insurance through your prior servicer, these services will not be continued.  If you wish to continue these services, you must contact your private insurer.**
- **This transfer does not affect any terms or conditions of your loan documents other than terms directly related to the servicing of your loan.**

If you have any questions related to the transfer of servicing from your prior servicer, please contact their Customer Service Department at 1-888-502-0100.

The mailing address for your prior servicer is as follows:
                                        PO Box 8517
                                        Portland, OR 97207

If you have any questions regarding your loan on or after 04/01/2009, please contact the SPS Customer Service Department at 1-800-258-8602 from 7 a.m. to 8 p.m. Eastern Time, Monday through Friday and 8 a.m. to noon on Saturdays.
Mailing addresses are:        **Customer Service**               **Payment Remittance**
                              P.O. Box 65777                     P.O. Box 65587
                              Salt Lake City, UT  84165          Salt Lake City, UT  84165

You may also access your account information online at www.spservicing.com.  Select Portfolio Servicing, Inc. is committed to quality customer service, and we look forward to working with you.

**Please note that Select Portfolio Servicing, Inc. may utilize an affiliated company to perform services related to your loan account and that Select Portfolio Servicing, Inc. and/or the affiliated company may receive a financial benefit as a result of such relationship.**

**WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS.  LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.**

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta llamando al teléfono 1-800-258-8602 y marque la opción 2.

Please see the reverse side of this notification for important information regarding your rights under the Real Estate Procedures Settlement Act ('RESPA').

NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

YOU ARE HEREBY NOTIFIED THAT THE SERVICING OF YOUR LOAN, THAT IS, THE RIGHT TO COLLECT PAYMENTS FROM YOU, IS BEING ASSIGNED, SOLD OR TRANSFERRED FROM WILSHIRE CREDIT CORPORATION TO SELECT PORTFOLIO SERVICING, INC. EFFECTIVE 04/01/2009. THE ASSIGNMENT, SALE OR TRANSFER OF THE SERVICING OF THE MORTGAGE LOAN DOES NOT AFFECT ANY TERM OR CONDITION OF THE MORTGAGE INSTRUMENTS, OTHER THAN THE TERMS DIRECTLY RELATED TO THE SERVICING OF YOUR LOAN.

EXCEPT IN LIMITED CIRCUMSTANCES, THE LAW REQUIRES THAT YOUR PRESENT SERVICER SEND YOU A NOTICE AT LEAST 15 DAYS BEFORE THE EFFECTIVE DATE OF TRANSFER OR AT CLOSING. YOUR NEW SERVICER MUST ALSO SEND YOU A NOTICE NO LATER THAN 15 DAYS AFTER THE EFFECTIVE DATE OR AT CLOSING.

YOU SHOULD ALSO BE AWARE OF THE FOLLOWING INFORMATION, PURSUANT TO SECTION 6 OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) (12 U.S.C. SECTION 2605):

DURING THE 60-DAY PERIOD FOLLOWING THE EFFECTIVE DATE OF THE TRANSFER OF THE LOAN SERVICING, A LOAN PAYMENT RECEIVED BY YOUR OLD SERVICER BEFORE ITS DUE DATE MAY NOT BE TREATED BY THE NEW LOAN SERVICER AS LATE, AND A LATE FEE MAY NOT BE IMPOSED ON YOU.

SECTION 6 OF RESPA (12 U.S.C. 2605) GIVES YOU CERTAIN CONSUMER RIGHTS. IF YOU SEND A "QUALIFIED WRITTEN REQUEST" TO YOUR LOAN SERVICER CONCERNING THE SERVICING OF YOUR LOAN, YOUR SERVICER MUST PROVIDE YOU WITH A WRITTEN ACKNOWLEDGEMENT WITHIN 20 BUSINESS DAYS OF RECEIPT OF YOUR REQUEST. A "QUALIFIED WRITTEN REQUEST" IS A WRITTEN CORRESPONDENCE, OTHER THAN NOTICE ON A PAYMENT COUPON OR OTHER PAYMENT MEDIUM SUPPLIED BY THE SERVICER, WHICH INCLUDES YOUR NAME AND ACCOUNT NUMBER, AND YOUR REASONS FOR THE REQUEST. NOT MORE THAN 60 BUSINESS DAYS AFTER RECEIVING YOUR REQUEST, YOUR SERVICER MUST MAKE ANY APPROPRIATE CORRECTIONS TO YOUR ACCOUNT, AND MUST PROVIDE YOU WITH A WRITTEN CLARIFICATION REGARDING ANY BUSINESS DISPUTE. DURING THIS 60-BUSINESS DAY PERIOD, YOUR SERVICER MAY NOT PROVIDE INFORMATION TO A CONSUMER REPORTING AGENCY CONCERNING ANY OVERDUE PAYMENT RELATED TO SUCH PERIOD OR QUALIFIED WRITTEN REQUEST. HOWEVER, THIS DOES NOT PREVENT THE SERVICER FROM INITIATING FORECLOSURE IF PROPER GROUNDS EXIST UNDER THE MORTGAGE DOCUMENTS.

A BUSINESS DAY IS A DAY ON WHICH THE OFFICES OF THE BUSINESS ENTITY ARE OPEN TO THE PUBLIC FOR CARRYING ON SUBSTANTIALLY ALL OF ITS BUSINESS FUNCTIONS.

SECTION 6 OF RESPA ALSO PROVIDES FOR DAMAGES AND COSTS FOR INDIVIDUALS OR CLASSES OF INDIVIDUALS IN CIRCUMSTANCES WHERE SERVICERS ARE SHOWN TO HAVE VIOLATED THE REQUIREMENTS OF THAT SECTION. YOU SHOULD SEEK LEGAL ADVICE IF YOU BELIEVE YOUR RIGHTS HAVE BEEN VIOLATED.

IF YOU HAVE FILED BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, PLEASE BE ADVISED THAT THIS STATEMENT DOES NOT REPRESENT AND IS NOT INTENDED TO BE A DEMAND FOR PAYMENT. THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. YOU SHOULD CONTACT LEGAL COUNSEL REGARDING YOUR OBLIGATION, IF ANY, TO PAY ON THE MORTGAGE LOAN.

Esta carta le informa que el servicio de su préstamo de hipoteca está siendo transferido a Select Portfolio Servicing, Inc. Varios aspectos importantes de su préstamo corriente pueden cambiarse durante y después de este proceso. Por favor lláme a nuestro representante de información y reclamaciones en español al numero de telefono indicado para hablar de estos cambios y cualquier pregunta que usted pueda tener.

Recording Requested By:
Encore Credit Corp

Return To:

Encore Credit Corp
1833 Alton Parkway
Irvine, CA 92606

Prepared By:
Encore Credit Corp.
1833 Alton Parkway
Irvine, CA 92606

1707792

# DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

MIN 100180100002442042

THIS DEED OF TRUST is made this 13th            day of July, 2005                      , among the Trustor,
DANNY Q. DIAZONI AND ELLEN S. DIAZONI, HUSBAND AND WIFE, AS JOINT TENANTS.

whose address is 1223  WILLIAM MCGRATH STREET COLTON                    , CA 92324
                                                                                                   (herein "Borrower"),
Fidelity National Title Insurance Company, A California Corporation
                                                                                   (herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Encore Credit Corp. A California
Corporation
                                                                                   ("Lender") is organized and
                                                                                   , and has an address of
existing under the laws of California
1833 Alton Parkway Irvine, CA 92606
     BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in the County of SAN BERNARDINO
                                                      , State of California:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

                                                                                   which has the address of
                                                                                   [Street],
1223 WILLIAM MCGRATH STREET
COLTON                              [City] , California 92324          [ZIP Code] (herein "Property Address");
                                                                                                      244204

CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

-76N(CA) (0204)                    Form 3805
Page 1 of 7                        Amended 8/99   DQD  ESD
     VMP MORTGAGE FORMS - (800)521-7291

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated July 13, 2005 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $79,400.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on August 1, 2020 ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

244204

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 15 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict

244206

shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees;

244204

and (6) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonably attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**24. Riders.** The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Prepayment Rider |

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded Concurrently Herewith , in Book _____ , Page _____ , records of SAN BERNARDINO County, or filed for record with recorder's serial number _____ , SAN BERNARDINO County, California, executed by ELLEN S. DIAZONI & DANNY Q. DIAZONI

as trustor (or mortgagor) in which Fidelity National Title Insurance Company, A California Corporation is named

as beneficiary (or mortgagee) and Encore Credit Corp, A California Corporation

as trustee

be mailed to Encore Credit Corp, A California Corporation
at 1833 Alton Parkway
Irvine, CA 92606

244204

Initials: DQD
ESD

01/25/2010 13:09 FAX 9099338615 PRA CONTRACT SERVICE Case 6:09-bk-32005-PC Doc 30 Filed 01/27/10 Entered 01/27/10 11:15:19 Desc

Main Document Page 35 of 48

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

_____

State of California
County of San Bernardino
On July 13 2005 , before me MIKO MARTIN, Notary Public
, personally appeared

Ellen S. Diazoni and Danny Q. Diazoni

, ~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same in ~~his/her/their~~ authorized capacity(ies), and that by ~~his/her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*[signature]*

MIKO MARTIN, Notary Public

**MIKO MARTIN**
**COMM. # 1405819**
NOTARY PUBLIC • CALIFORNIA
SAN BERNARDINO COUNTY
Comm. Exp. MARCH 17, 2007

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

*Ellen S. Diazoni* (Seal)
ELLEN S. DIAZONI          -Borrower

*Danny Q. Diazoni* (Seal)
DANNY Q. DIAZONI          -Borrower

_____ (Seal)          _____ (Seal)
                  -Borrower                            -Borrower

_____ (Seal)          _____ (Seal)
                  -Borrower                            -Borrower

_____ (Seal)          _____ (Seal)
                  -Borrower                            -Borrower

*[Sign Original Only]*

244204

Form 3805

-79N(CA) (0204)          Page 6 of 7

State of California    _San Bardino_
County of
On _July 13, 2005_            , before me _Miko Martin, notary Public_, personally appeared

ELLEN S. DIAZONI, DANNY C. DIAZONI
                                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

    WITNESS my hand and official seal.

_Miko Martin, Notary Public_

_MIKO MARTIN
COMM. # 1406819
NOTARY PUBLIC • CALIFORNIA
SAN BERNARDINO COUNTY
Comm. Exp. MARCH 17, 2007_

244204

Form 3805

76M(CA) (0701)                    Page 7 of 7

*exhibit*

~~SCHEDULE "A"~~

THE FOLLOWING DESCRIBED PROPERTY IN THE CITY OF COLTON, COUNTY OF
SAN BERNARDINO STATE OF CALIFORNIA; LOT 101 OF TRACT 14391-2, IN
THE CITY OF COLTON, COUNTY OF SAN BERNARDINO. CALIFORNIA AS PER
MAP RECORDED IN BOOK 262, PAGE(S) 39 TO 41. INCLUSIVE IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. EXCEPTING THEREFROM
AN UNDIVIDED 1/2 INTEREST IN AND TO ALL OIL, GAS AND KINDRED
SUBSTANCES IN OR UNDER SAID LAND AS RESERVED BY FANNIE HAMPTON,
ET AL, BY DEED RECORDED JULY 20, 1937, IN BOOK 1216, PAGE 292,
OFFICIAL RECORDS. ALSO EXCEPTING THEREFROM AN UNDIVIDED 1/4
INTEREST IN AND TO ALL OIL, GAS AND KINDRED SUBSTANCES, AS
RESERVED BY PAUL LEWIS DAUPHINE ET UX, BY DEED RECORDED JANUARY
2, 1947, IN BOOK 1985, PAGE 65, OFFICIAL RECORDS. ALSO EXCEPTING
THEREFROM ALL REMAINING MINERALS AND MINERAL RIGHTS, INTERESTS
AND ROYALTIES, INCLUDING, WITHOUT LIMITING THE GENERALITY
THEREOF, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, AS WELL AS
METALLIC OR OTHER SOLID MINERALS, IN AND UNDER SAID PROPERTY;
WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED BY SOUTHERN
PACIFIC TRANSPORTATION COMPANY, A DELAWARE CORPORATION, IN DEED
RECORDED AUGUST 10, 1989, INSTRUMENT NO. 89-291385, OFFICIAL
RECORDS. THIS CONVEYANCE IS MADE AND ACCEPTED AND SAID PROPERTY
IS HEREBY GRANTED SUBJECT TO THOSE CERTAIN COVENANTS, CONDITIONS
AND RESTRICTIONS RECORDED AUGUST 10, 1969. INSTRUMENT NO. 89-
291385, OFFICIAL RECORDS OF SAID COUNTY AND ANY AMENDMENTS
THERETO, ALL OF WHICH BY THIS REFERENCE ARE HEREBY EXPRESSLY
INCORPORATED IN AND MADE A PART HEREOF, AS THOUGH FULLY SET FORTH
HEREIN. SOURCE OF TITLE: DOCUMENT NO. 19980085439 (RECORDED
03/10/98) APN: 0160-401-67-0-000

## PREPAYMENT RIDER
### (Multi-State)

**Loan Number:** 244204

**Date:** July 13, 2005

**Borrower(s):** ELLEN S. DIAZONI, DANNY Q. DIAZONI

This Prepayment Rider is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of trust or Security Deed of the same date (the"Security Instrument") made by the undersigned (the "Borrower") as trustor or mortgagor in favor of Encore Credit Corp. A California Corporation (the "Lender").

To the extent that the provisions of the Prepayment Rider are inconsistent with the provisions of the Security Instrument, the provisions of the Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument.

**Prepayment Covenants.** Notwithstanding anything to the contrary set forth in the Security Instrument, Borrower and Lender covenant, and agree, as follows:

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". A "Full Prepayment" is the prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

If within Twenty-four (24) months from the date of execution of the Security Instrument I make a full or partial Prepayment, and the total of such Prepayments in any 12-month period exceeds TWENTY PERCENT (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX (6) months' advance interest on the amount by which the total on my Prepayments within that 12-month period exceeds TWENTY PERCENT (20%) of the original Principal amount of the loan.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand.

037/043

## PREPAYMENT RIDER
### (Multi-State)

All other provisions of the Security Instrument are unchanged and remain in full force and effect.

**NOTICE TO BORROWER**
    Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_Ellen S. Diazoni_  7/13/05        _Danny Q. Diazoni_ 07/13/05
ELLEN S. DIAZONI            Date        DANNY Q. DIAZONI            Date

_____            _____
                            Date                                    Date

_____            _____
                            Date                                    Date

_____            _____
                            Date                                    Date

## PREPAYMENT RIDER
### (Multi-State)

All other provisions of the Security Instrument are unchanged and remain in full force and effect.

**NOTICE TO BORROWER**
Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_Ellen. S. Diazoni_ 7/13/05     _Danny Q. Diazoni_ 07/13/05
**ELLEN S. DIAZONI**    Date       **DANNY Q. DIAZONI**    Date

_____       _____
              Date                           Date

_____       _____
              Date                           Date

_____       _____
              Date                           Date

Loan Number:        244204

# BALLOON PAYMENT DISCLOSURE
*Notice: Read Before Signing Your Loan Documents*

**Borrower Name(s):**
ELLEN S. DIAZONI, DANNY Q. DIAZONI

**Lender:**
Encore Credit Corp. A California Corporation

**Property Address:**
1773 WILLIAM MCGRATH STREET, COLTON,
CA 92324

**Date:**
July 13, 2005

**NOTICE TO BORROWER:** IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.

This loan provides for   179   monthly payments of: (check one)

       [ X ] principal and interest    [   ] "interest only"

in the amount of $ 767.43    each. Assuming that all of the monthly payments have been paid exactly on the date that each is due, a final payment of the then outstanding principal balance plus all earned interest remaining unpaid ("Balloon Payment" amount) estimated to be in the amount of $ 67,000.10

shall become due and payable on August 1, 2020    (the "Maturity Date").

### DO NOT SIGN ANY LOAN DOCUMENTS IF YOU
### HAVE ANY QUESTIONS ABOUT YOUR LOAN PAYMENTS.

Unless otherwise expressly disclosed in the Note, or in Addendum or a Rider to the Note, **THE LENDER IN THIS TRANSACTION IS UNDER NO OBLIGATION TO REFINANCE THE OUTSTANDING PRINCIPAL BALANCE OF THIS LOAN DUE ON THE MATURITY DATE.** You may be required to payoff the entire principal balance, plus any unpaid interest due thereon, on the maturity date using personal assets. If the Lender, or any other Lender, agrees to refinance the outstanding balance due on the maturity date, you may be required to pay the then prevailing interest rate, which may be higher or lower than the interest rate specified in the Note, plus loan origination costs and fees are typically incurred when creating a new loan.

**ALL BORROWERS MUST SIGN AND DATE**

I/We hereby acknowledge receipt of the above notice concerning the balloon payment provisions of this loan. I/We further acknowledge that these provisions have also been orally explained to me/us.

_Ellen S. Diazoni_    7/13/05      _Danny Q Diazoni_   07/13/05

ELLEN S. DIAZONI      (Date)        DANNY Q. DIAZONI      (Date)

_____ (Date)      _____ (Date)

_____ (Date)      _____ (Date)

01/25/2... CFI CUSTOMER SERVICE ...040/043

—[ Space Above This Line For Recording Data ]—

Loan Number:                    244204

# BALLOON RIDER

THIS BALLOON RIDER is made this  13th  day of  July  2005  , and is incorporated into and shall deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to                                                    Encore Credit Corp. A California Corporation
(the "Lender") of the same date and covering the property in the Security Instrument and located at:

1223 WILLIAM MCGRATH STREET, COLTON, CA  92324

[Property Address]

The interest stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.**    In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

MULTISTATE BALLOON RIDER            Page 1 of 2            BAL.RIDER.UFF

041/043
CTI CUSTMER SERVICE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Balloon Rider.

_Ellen. S. Diazoni_ 7/13/05    _Danny Q Diazoni_ 07/13/05
Borrower **ELLEN S. DIAZONI**    Date    Borrower **DANNY Q. DIAZONI**    Date

_____    _____
Borrower    Date    Borrower    Date

_____    _____
Borrower    Date    Borrower    Date

[ Space Above This Line For Recording Date ]

Loan Number:                          244204

# BALLOON RIDER

THIS BALLOON RIDER is made this 13th day of July    2005    , and is incorporated into and shall deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to                                          Encore Credit Corp. A California Corporation

(the "Lender")  of the same date and covering the property in the Security Instrument and located at:

1223 WILLIAM MCGRATH STREET, COLTON, CA 92324

[Property Address]

The interest stated on the Note is called the "Note Rate. " The date of the Note is called the "Note Date. " I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS.    In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_Ellen S. Diazoni_ 7/13/05    _Danny Q Diazoni_ 07/13/05

Borrower **ELLEN S. DIAZONI**    Date    Borrower **DANNY Q. DIAZONI**    Date

_____    _____
Borrower    Date    Borrower    Date

_____    _____
Borrower    Date    Borrower    Date

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO


     I am employed in the County of San Bernardino, State of California. I am over the age of 18 and not a party to the within action; my business address is: 300 E. State Street, Suite 450, Redlands, CA 92373.

     On January 27, 2010, I served the foregoing document described as **NOTICE OF MOTION AND MOTION TO DECLARE DEBT TO SECOND TRUST DEED HOLDER SELECT PORTFOLIO, INC. UNSECURED AND AVOID LIEN; DECLARATION OF DANNY QUIRINO DIAZONI; DECLARATION OF DANIEL WILLIAMS; POINTS AND AUTHORITIES** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Redlands, California, addressed as follows:


SEE ATTACHED SERVICE LIST


     Executed on January 27, 2010, at Redlands, California. I declare under penalty of perjury that the above is true and correct.

                                *Adele R. Lutter*
                              ADELE R. LUTTER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ***SERVICE LIST***

*In re* Danny Quirino Diazoni            CHAPTER 13
      Ellen Sofia Diazoni

Case No. 6:09-bk-32605-PC

---

## ***FOLLOWING PARTIES SERVED VIA U.S. MAIL***

*Debtors*
Danny Quirino Diazoni
Ellen Sofia Diazoni
1223 William McGrath Street
Colton, CA 92324


*Chapter 13 Trustee*
Rod Danielson
4361 Latham Street, Suite 270
Riverside, CA  92501


*U.S. Trustee*
Office of the U.S. Trustee
3685 Main Street, Suite 300
Riverside, Ca  92501


*Agent for Service of Process of HSBC Mortgage Services.*
CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017


*Agent for Service of Select Portfolio Servicing, Inc.*

CSC-Lawyers Incorporating Service
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833

*Notice of Motion and Motion to Declare Debt to Second Trust Deed Holder*
*SELECT PORTFOLIO, INC. Unsecured and Avoid Lien, etc.*

1

2   Jason H. Miller
3   Select Portfolio Servicing, Inc.
    3815 S. West Temple
4   Salt Lake City, UT 84115

5

6   ***FOLLOWING PARTIES SERVED VIA CERTIFIED MAIL***

7
    *First Trust Deed Holder*
8   HSBC MORTGAGE SERVICES
    Attn: Vice-President
9   636 Grand Regency Blvd.
    Brandon, FL 33510
10

11
    *Second Trust Deed Holder*
12  SELECT PORTFOLIO SERVICING, INC.
    Attn: Vice-President
13  P.O. Box 65250
    Salt Lake City, UT 84165-0250
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        11